[L. A. No. 9870. In Bank.—December 15, 1927.]

E. L. BRENOT, Appellant, v. SOUTHERN PACIFIC RAILROAD COMPANY (a Corporation) et al., Respondents.

[1] RAILROADS—FENCING RIGHT OF WAY—INJURY TO ANIMALS—NEGLIGENCE.—In an action for damages for the alleged negligent killing and injuring of mules belonging to the plaintiff by a railroad company, where the court found that the mules entered upon the railroad right of way and tracks through an opening made and left unguarded in the fence along the right of way and proceeded along the right of way and tracks to a point where the right of way was fenced on both sides and where there was a precipitous rise in the ground on one side of the track and a sharp decline on the other side, at which point the mules were struck by a locomotive rounding a curve, there is nothing in the finding to indicate that the fence contributed in any way to the injuries sustained by the animals and hence there was no liability on the part of the railroad.

[2] ID.—SECTION 485, CIVIL CODE—CONSTRUCTION.—Before the amendment to section 485 of the Civil Code, one whose animals crossed intervening lands on the way from his property to a railroad right of way and were there injured or killed could not recover for the loss suffered.

[3] ID.—GRANT OF RIGHT OF WAY—AGREEMENT TO CONSTRUCT AND MAINTAIN FENCE.—Where by the terms of a grant of a right of way for a railroad the grantee was required to construct and maintain a fence on each side of the right of way, this covenant

---

2. See 12 Cal. Jur. 494; 11 R. C. L. 904.

was for the benefit of the grantors, and one whose animals have
been injured by being struck by a locomotive is not entitled to
recover by reason of the breach of such covenant, where it appears
that his animals strayed from his leasehold which had been en-
tirely severed from the lands of the original grantor and did not
border the railroad right of way.

(1) 33 **Cyc.**, p. 1186, n. 74.   (2) 33 **Cyc.**, p. 1175, n. 98.   (3) 4
**C. J.**, p. 778, n. 75; 33 **Cyc.**, p. 1174, n. 88.

APPEAL from a judgment of the Superior Court of
Los Angeles County. Albert Lee Stephens, Judge. Af-
firmed.

The facts are stated in the opinion of the court.

Louis P. Boardman and Philip C. Boardman for Appel-
lant.

W. I. Gilbert for Respondents.

CURTIS, J.—At the time of granting a hearing of this
cause, after a decision thereof by the district court of ap-
peal, we entertained some doubt as to whether the facts of
this case as found by the court did not bring it within the
rule announced in the cases of the *Denver & Rio Grande
R. R. Co.* v. *Robinson,* 6 Colo. App. 432 [40 Pac. 840];
*Missouri K. & G. Ry. Co. of Texas* v. *Lovell,* 110 Tex. 546
[221 S. W. 929]; *International & G. N. R. Co.* v. *Dixon,*
49 Tex. Civ. App. 506 [109 S. W. 978]. These authorities
hold in effect that where a railway company, although under
no legal obligation to fence its right of way, elects to do so,
it must not by the construction of such fence increase the
danger of animals straying thereon. The principle enunci-
ated in these cases is well illustrated in the following ex-
cerpt from the opinion in the *Denver & Rio Grande R. R.
Co.* v. *Robinson, supra:* ''There was at that time no law re-
quiring the company to fence its right of way; but if it
was responsible for the maintenance of this inclosure, it
was its duty to take proper precautions to prevent cattle
from going within it. Left in the condition it was in, it
was, as counsel characterizes it, a trap, from which cattle
within it, when a train entered it from the west, had little
chance to escape. An animal upon the track, frightened

by an approaching train, and seeing a fence on either side, would naturally seek an outlet over the bridge, where it would be caught in the open spaces between the ties, and must inevitably be run upon if the train proceeded. In this state an owner of cattle may permit them to run at large; and surely, if a railroad company sees fit, unnecessarily, to fence its right of way, and in doing this makes an inclosure so contrived that there is easy access to it by cattle at one point, and no escape at any other, it cannot be acquitted of blame when an accident occurs as the direct consequence of its act.''

After a further consideration of the findings of fact in this case, with the above authorities in view, we are of the opinion that the facts found by the trial court in this action do not bring this case within the rule followed by the courts in the cases just referred to. In the present action the court found that appellant's mules ''entered upon said right of way and railroad tracks of said defendants through the opening made and left unguarded, as hereinafter set forth, in the fence so previously constructed and maintained by said defendant corporations along the southerly line of said strip of land and right of way, and proceeded along said right of way and along the railroad tracks thereon to a point where the right of way was fenced on both sides and where there was a precipitous rise in the ground on one side of said railroad tracks and a sharp decline on the other, and at which point said mules were struck by the locomotive of a freight train of said defendant corporations, rounding a curve just beyond in said railroad tracks, and two of said mules of plaintiff were thereby killed outright, and three of said mules received such injuries that they died therefrom, and one of said mules thereby received such injuries that it was crippled and greatly incapacitated for work.''

[1] There is nothing in this finding to indicate that the fence maintained by respondents along its right of way contributed in any material manner to the injuries sustained by appellant's mules. From anything that appears in the findings the mules might have been killed in the manner in which they were in the absence of any fence whatever. They were on the track at the time they were struck by respondents' train at a point along the right of way where

"there was a precipitous rise in the ground on one side of said railroad tracks and a sharp decline on the other," and they were struck by said train "rounding a curve just beyond in said railroad tracks." Evidently they were unable to leave the railroad track by reason of the uneven character of the ground in the immediate vicinity of where they were struck by the train, rather than on account of the fence along the railroad right of way. In fact, as we understand the finding, as above quoted, the fence maintained by respondents was not in any way responsible for the mules being on the railroad track at the time when they were struck by respondents' train, nor did the fence in any manner prevent the escape of the mules from the danger they were in when the train approached. Had the right of way been unfenced appellant's mules could have entered thereon and they could have received a like injury to that which the court found they sustained after their entry thereon through the opening left in the fence by respondents. The fence, therefore, did not contribute either proximately or remotely to any injury received by the mules. It cannot be said, as it was in the cases above referred to, that the fence of respondents formed a trap or *cul-de-sac* into which animals straying on to the right of way and becoming frightened by an approaching train might be driven, and being unable to escape therefrom on account of the presence of the fence would be run over if the train proceeded. If the animals of appellant were in a place from which it was difficult or impossible to extricate themselves before they were struck by the approaching train, as we have already seen was the case, their dangerous predicament was not in any way attributable to the fence maintained by respondents. There was nothing except the precipitous character of the ground on either side of the track which prevented the mules from leaving the track on the approach of the train. They could have traveled along the track in front of the moving train and in that way might have escaped had not the train come suddenly upon them as it rounded a curve. It was expressly stipulated, however, that there was no negligence on the part of the train crew operating the train, the locomotive of which struck and injured the mules. As we view the case there was nothing in the findings to indicate that the fence maintained by the re-

spondents along their right of way in any way increased· the danger to appellant's mules after they had strayed upon the respondents' right of way.

We are, therefore, satisfied that under the facts found by the trial court the opinion written by Mr. Presiding Justice Works and concurred in by Mr. Justice Craig and Mr. Justice Thompson, correctly disposes of the legal questions presented herein. It is adopted as the opinion of this court, and is as follows:

"This is an action for damages occasioned by the alleged negligence of the defendants. Plaintiff was the owner of six mules, five of which were killed and one of which was rendered worthless, by being run down by one of defendants' trains. Defendants had judgment and plaintiff appeals.

"Points arising on the appeal are presented upon the findings of the trial court. It was found, among other things, that defendants, at the time the mules were run down, were engaged in operating a railroad over a certain strip of land, which strip had been conveyed by deed to one of defendants as a right of way by two men of the name of Porter; that by the terms of the grant the grantee was required 'to construct and maintain a good and substantial fence on each side of said strip of land and right of way; that said defendant did thereafter,' and before the accident to appellant's mules, 'construct and maintain such fence . . . as required by said grant'; that at the time of the accident appellant, 'as successor in interest by leasehold' of one of the Porters, 'was in the possession and useful occupation of certain lands lying close to, but not bordering upon, the said right of way . . . and which lands belonged to' Porter 'at the date of said conveyance by him . . . of said right of way and constituted a portion of the lands through which said right of way·had been granted'; that at the time of the accident to the mules the city of Los Angeles, having acquired the right to construct a certain aqueduct across the right of way of respondents, while 'in the course of the work of constructing said aqueduct . . . by and with the knowledge and consent of' respondents, 'and with their aid and co-operation, . . . did remove a large portion of said fence from the southerly line of said right of way, and did also remove a cattle-guard from said

right of way, leaving the northerly line . . . entirely fenced, and leaving the southerly line of said right of way and the railroad tracks thereon unfenced and open and without guards . . . and without any protection against the entry of stock thereon; that the aid and co-operation of' respondents ' . . . in constructing said aqueduct consisted particularly of the work of removing said cattle-guard and shifting said railroad tracks and maintaining the same . . . for the passage of trains during the course of said work'; that appellant was at the time the owner of the six mules, of the aggregate value of $1,800, 'which were on his said premises,' confined in a corral in which 'they had been impounded for the night by' appellant; that they broke therefrom 'and wandered out and along for a mile or more upon' a certain road 'to the point where said road formerly crossed said right of way and railroad tracks, at which point they had often been driven across said right of way and railroad tracks to a pasture beyond, and entered upon said right of way and railroad tracks . . . through the opening made and left unguarded, . . . in the fence so previously constructed and maintained along the southerly line of said . . . right of way'; that the mules then proceeded 'along the railroad tracks to a point where the right of way was fenced on both sides and where there was a precipitous rise in the ground on one side of said railroad tracks and a sharp decline on the other'; and that at that point they were struck by the locomotive of a freight train of respondents, 'rounding a curve just beyond in said railroad tracks,' with the result already stated.

[2] "The present action is an old one, the complaint having been filed practically a year before the amendment to section 485 of the Civil Code (Stats. 1915, p. 1281), which is now in effect. Before the amendment the section read, in part: 'Railroad corporations must take and maintain a good and sufficient fence on either or both sides of their track and property. In case they do not make and and maintain such fence, if their engine or cars shall kill or maim any cattle or other domestic animals upon their line of road which passes through or along the property of the owner thereof, they must pay to the owner of such cattle or other domestic animals a fair market price for the same, unless it occurred through the neglect or fault of the owner

of the animal so killed or maimed.' Because of the finding of the trial court that the land of which appellant was lessee lay close to but did not border upon the right of way of respondents, appellant may not recover under this section as it formerly stood. It has been directly decided (*Barbee* v. *Southern Pacific Co.*, 9 Cal. App. 457 [99 Pac. 541]), that the relief afforded by the enactment may be resorted to only by a proprietor occupying lands abutting upon a right of way.

"There are many cases in other states holding, under the general law of negligence, that a recovery may be had from a railroad company under such circumstances as existed here. Respondents, after having constructed their fence along both sides of their tracks, it will be observed, removed a portion of the structure on one side, thus providing a means of ingress to the tracks, there being no means of egress therefrom except through the break which they had made. It seems that in this state, before section 485 was amended and under the opinion in the case above cited and other adjudications referred to in it, one whose animals crossed intervening lands on the way from his property to a railroad right of way and were there injured or killed, under the circumstances above stated, might not have recovered for the loss suffered. The remedy allowed by the section seems to have been exclusive.

[3] "Appellant contends, however, that he is entitled to recover because of the breach by respondents of their covenant, in the deed by which they acquired the right of way, to erect and maintain a fence along the strip acquired. Granting for the sake of argument, without deciding, that the covenant was one running with the land, and that there is no legal objection against appellant, as a lessee and not a holder of title, availing himself of the covenant, we think relief must be denied him on other grounds. It is obvious that the covenant was made for the purpose of preventing ingress of livestock to the right of way from the property of the Porters from which it had been segregated or set apart by the grant. The contiguity of location which must have been contemplated by this purpose has been destroyed. This is evident from the finding of the trial court that the leasehold of appellant did not border upon the right of way but lay close to it. There was no finding as to the owner-

ship of the land lying between the leasehold and the right
of way, or as to the nature of the use to which it was being
put, and as to those matters, under familiar rules of law,
we are bound to make all possible assumptions which will
uphold the decision of the trial court. Let us assume, then,
that the intervening strip had been condemned as a right of
way for a public highway which extended along the railroad
right of way and across the entire body of land formerly
owned by the Porters, thus entirely segregating the latter
right of way from the entire tract on that side, and that at
the time of the accident to the mules the public road had
been built and was being used by the general public. Would
not appellant be in the same situation with others of the
general public if his mules emerged from the leasehold,
got upon the public road and thence upon the railroad right
of way through the breach in the fence? We think he
would. The covenant having been made for the purpose of
insuring that livestock of the Porters or of their assignees
should not emerge from their lands and thus enter, imme-
diately, upon the right of way, we think it cannot be held
to protect appellant from a loss occasioned by the entry of
his mules upon the railroad right of way from a public
highway. No authority is presented to us upon this ques-
tion and we know of none."

Judgment affirmed.

Shenk, J., Richards, J., Seawell, J., Langdon, J., and
Waste, C. J., concurred.

PRESTON, J., Dissenting.—I dissent.

To my mind the findings are susceptible only of the con-
struction that the mules in question were on the track be-
cause of the *cul-de-sac,* and that they were caught thereon
because of their inability to get off the right of way.

The fact that at the particular spot the precipitous
grounds may have prevented the mules from beating a hasty
retreat into the fence does not alter the fact that they were
in a trap.

There is no finding that there was room between the
rails and fence for the accommodation of the stock, and if
there was it would not be controlling. Mules in such a
trap cannot be charged with negligence, nor can they be

expected to exercise ordinary horse sense. Seeing the fence on either side, the oncoming train "stampeded" them and they were killed as the result of such conditions. I may be speaking with some judicial knowledge of the habits of the mule.